SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

## Marilyn Flanzman v. Jenny Craig, Inc. (A-66-18) (082207)

**Argued November 19, 2019 -- Decided September 11, 2020**

**PATTERSON, J., writing for the Court.**

In this appeal, the Court considers whether the Arbitration Agreement (Agreement) signed by plaintiff Marilyn Flanzman and her former employer compels arbitration of Flanzman's discrimination claims given that the Agreement did not name the arbitrator, designate an arbitration organization to conduct the proceeding, or set forth a process for the parties to choose an arbitrator.

In approximately July 1991, Jenny Craig, Inc., a weight loss, weight management, and nutrition company, hired Flanzman to work as a weight maintenance counselor. In May 2011, Flanzman signed a document entitled "Arbitration Agreement" in connection with her employment. In February 2017, when the dispute that led to this appeal arose, Flanzman was eighty-two years old. Flanzman's managers informed her that her hours would be reduced from thirty-five to nineteen hours per week. In April 2017, Flanzman's managers further reduced her hours to approximately thirteen hours per week. In June 2017, they reduced her hours to three hours per week, at which point she left her employment.

Flanzman brought suit, asserting claims for age discrimination, constructive discharge, discriminatory discharge, and harassment. Relying on the Agreement, defendants moved to dismiss the complaint and to compel arbitration. Defendants contended that California law governed the Agreement and that the Agreement was enforceable. The trial court granted the motion to dismiss and ordered the parties to arbitrate Flanzman's claims. It held that California law governed the arbitration and that the arbitral forum is assumed to be California.

The Appellate Division reversed. 456 N.J. Super. 613, 630 (App. Div. 2018). The Appellate Division invalidated the Agreement because it did not designate an "arbitral forum." Id. at 623-24. The court held that if the parties select no "arbitral institution," they must at least identify "the general process for selecting an arbitration mechanism or setting" in order for their agreement to be binding. Id. at 628-29.

The Court granted certification. 237 N.J. 310 (2019).

1

**HELD:**  The New Jersey Arbitration Act (NJAA), which provides a default procedure for the selection of an arbitrator and generally addresses the conduct of the arbitration, clearly expresses the Legislature's intent that an arbitration agreement may bind the parties without designating a specific arbitrator or arbitration organization or prescribing a process for such a designation.  N.J.S.A. 2A:23B-11(a), -15.  Under principles of New Jersey law that generally govern contracts, the Agreement at issue is valid and enforceable.

1.  Section 2 of the Federal Arbitration Act (FAA) represents a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.  The FAA preempts any state rule discriminating on its face against arbitration.  In the FAA, Congress also promoted arbitration by addressing the selection of an arbitrator.  Section 5 of the statute authorizes a court to designate an arbitrator on the application of any party if no contractual provision governs the designation of an arbitrator, and an arbitrator or arbitrators appointed by the court in accordance with the FAA "shall act under the [arbitration] agreement with the same force and effect as if he or they had been specifically named therein."  9 U.S.C. § 5.  (pp. 13-15)

2.  The New Jersey Arbitration Act (NJAA) is nearly identical to the FAA and enunciates the same policies favoring arbitration.  The NJAA's legislative history confirms the Legislature's view that the statute would operate as a "default" provision, deferring in most respects to the terms agreed upon by the parties but mandating certain provisions that the Legislature viewed to be critical.  As did Congress when it enacted 9 U.S.C. § 5, the Legislature ensured in the NJAA that a court can act when the parties have not agreed on a specific arbitrator or designated a method of choosing an arbitrator, or when an agreed-upon selection process has failed.  See N.J.S.A. 2A:23B-11(a).  The NJAA thus codifies the Legislature's intent that an arbitration agreement may be valid and enforceable even if the parties have not chosen a specific arbitrator or set forth a process for the selection of the arbitrator.  The NJAA also provides general guidance as to how the arbitration will proceed.  See N.J.S.A. 2A:23B-15(a) to (e).  (pp. 15-18)

3.  In light of the NJAA's default provisions supplying terms missing from an arbitration agreement, a court's enforcement of an agreement supplemented by those terms comports with common-law principles of New Jersey contract law.  Although the parties may choose to agree upon an arbitrator or arbitral organization or set forth a plan for such a designation, the NJAA's default provisions are available to parties who leave those issues unresolved.  (pp. 18-20)

4.  When a New Jersey court is called on to enforce an arbitration agreement, its initial inquiry must be -- just as it is for any other contract -- whether the agreement to arbitrate all, or any portion, of a dispute is the product of mutual assent, as determined under customary principles of contract law.  Conducting that inquiry in Atalese v. U.S. Legal

2

Services Group, L.P., the Court observed that "under New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." 219 N.J. 430, 443 (2014). The Arbitration Agreement at issue in this appeal meets the standard of Atalese. (pp. 20-22)

5. When it invalidated the Agreement, the Appellate Division set forth a requirement for arbitration agreements that was not imposed in Atalese, mandating either the designation in the agreement of an "arbitral institution" or a description of "the general process for selecting an arbitration mechanism or setting." 456 N.J. Super. at 628-29. That principle is not among the "grounds as exist at law or in equity for the revocation of any contract." Atalese, 219 N.J. at 441. No New Jersey statutory provision or prior decision has elevated the selection of an "arbitral institution" or the designation of a "general process for selecting an arbitration mechanism or setting" to the status of essential contract terms, without which an arbitration agreement must fail. To the contrary, the NJAA makes clear that its default provision for the selection of an arbitrator may operate in the absence of contractual terms prescribing such procedures. See N.J.S.A. 2A:23B-11(a). The Court shares the Appellate Division's view that a detailed description of the contemplated arbitration in an arbitration agreement enhances the clarity of that agreement and agrees that it may be advantageous for parties to designate in their agreement an arbitral organization but also provide an alternative method of choosing an organization should the parties' primary choice be unavailable. See 456 N.J. Super. at 626-30. But the parties' omission of a designated arbitral institution or general process for selecting an arbitration mechanism or setting does not warrant the invalidation of an arbitration agreement. Should the parties prove unable or unwilling to agree upon an arbitrator, the court may exercise its appointment authority in accordance with N.J.S.A. 2A:23B-11 on the application of either party, and the designated arbitrator may conduct the arbitration in accordance with the procedures described in N.J.S.A. 2A:23B-15. In short, the Agreement at issue in this appeal meets the standards imposed by New Jersey contract law and is therefore valid and enforceable. (pp. 22-27)

6. The Court finds the Agreement to be silent as to the governing law and the jurisdiction in which the arbitration should be held. The Court therefore vacates the trial court's judgment insofar as it designates California law as the governing law and concludes that the parties agreed that California would provide the forum of the arbitration. That issue is for the arbitrator to resolve. (pp 27-28)

**The judgment of the Appellate Division is REVERSED, and the judgment of the trial court is REINSTATED AS MODIFIED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PATTERSON's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-66 September Term 2018

082207

Marilyn Flanzman,

Plaintiff-Respondent,

v.

Jenny Craig, Inc., Lillias Piro, individually,
and Denise Shelley, individually,

Defendants,

and

JC USA, Inc.,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
456 N.J. Super. 613 (App. Div. 2018).

| Argued | Decided |
|---|---|
| November 19, 2019 | September 11, 2020 |

Sharon P. Margello argued the cause for appellant
(Ogletree, Deakins, Nash, Smoak & Stewart, attorneys;
Sharon P. Margello and Jocelyn A. Merced, on the
briefs).

David Zatuchni argued the cause for respondent
(Zatuchni & Associates, attorneys; David Zatuchni, on
the brief).

1

William D. Wright argued the cause for amicus curiae New Jersey Association for Justice (The Wright Law Firm, attorneys; William D. Wright and David T. Wright, on the brief).

Andrew Dwyer argued the cause for amicus curiae National Employment Lawyers Association of New Jersey (Dwyer & Barrett, attorneys; Andrew Dwyer, of counsel and on the brief).

JUSTICE PATTERSON delivered the opinion of the Court.

In this appeal, we determine whether the Arbitration Agreement (Agreement) signed by plaintiff Marilyn Flanzman and her former employer, defendant JC USA, Inc. (JC USA), compels arbitration of Flanzman's discrimination claims. In the Agreement, Flanzman and JC USA agreed to resolve their disputes by "final and binding arbitration" that would take the place of "a jury or other civil trial." Although the Agreement stated that an arbitrator would resolve the parties' disputes, it did not name the arbitrator, designate an arbitration organization to conduct the proceeding, or set forth a process for the parties to choose an arbitrator.

Following a dispute with her employer, Flanzman left her position and filed a complaint against the employer and individual defendants, alleging age discrimination, constructive discharge and other claims pursuant to the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -49. The trial court granted

2

defendants' motion to dismiss Flanzman's complaint and compel arbitration of her claims.

The Appellate Division reversed the trial court's judgment. Flanzman v. Jenny Craig, Inc., 456 N.J. Super. 613, 625-30 (App. Div. 2018). The court held that in order to be valid, an arbitration agreement must designate either an "arbitral institution" or a "process for selecting an arbitration mechanism or setting," and declined to enforce the Agreement on those grounds. Id. at 628-29.

We granted JC USA's petition for certification and reverse the Appellate Division's judgment. As did Congress in the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1 to 16, the New Jersey Legislature adopted a policy in favor of arbitration in the New Jersey Arbitration Act (NJAA), N.J.S.A. 2A:23B-1 to -36. The NJAA, which provides a default procedure for the selection of an arbitrator and generally addresses the conduct of the arbitration, clearly expresses the Legislature's intent that an arbitration agreement may bind the parties without designating a specific arbitrator or arbitration organization or prescribing a process for such a designation. N.J.S.A. 2A:23B-11(a), -15.

Applying principles of New Jersey law that generally govern contracts, we hold that the Agreement at issue is valid and enforceable. We modify the

3

trial court's judgment as to the governing law and forum for the arbitration, and we reinstate that judgment as modified.

## I.

## A.

We derive our summary of the facts from the record presented to the trial court.

In approximately July 1991, Jenny Craig, Inc. (Jenny Craig), a weight loss, weight management, and nutrition company, hired Flanzman to work as a weight maintenance counselor at its facility in Paramus, New Jersey.[1] In that capacity, Flanzman provided weight-loss and weight-maintenance counseling to Jenny Craig customers. Her normal hours as a Jenny Craig employee were approximately thirty-five hours per week.

On May 12, 2011, Flanzman signed a document entitled "Arbitration Agreement" in connection with her employment.[2] The Agreement provided in part:

---

[1] The record does not reveal the date on which Flanzman ceased being an employee of Jenny Craig and became an employee of JC USA, nor does it explain the relationship between the two corporate entities.

[2] In a certification submitted to the trial court, Flanzman stated that she did not recall "ever seeing the form called 'Arbitration Agreement' before this litigation," and that she had "no memory of being asked to sign this specific form called, 'Arbitration Agreement.'" She conceded, however, that the Agreement "does contain my signature."

4

Any and all claims or controversies arising out of or relating to Employee's employment, the termination thereof, or otherwise arising between Employee and Company shall, in lieu of a jury or other civil trial, be settled by final and binding arbitration. This agreement to arbitrate includes all claims whether arising in tort or contract and whether arising under statute or common law including, but not limited to, any claim of breach of contract, discrimination or harassment of any kind. The parties also agree to submit claims to the Arbitrator regarding issues of arbitrability, the validity, scope, and enforceability of this Agreement, his or her jurisdiction, as well as any gateway, threshold, or any other challenges to this Agreement, including claims that this Agreement is unconscionable.

The arbitrator shall not have the authority to add to, subtract from or modify any of the terms of this Agreement. Judgment on any award rendered by the arbitrator may be entered and enforced by any court having jurisdiction thereof. Employee will pay the then-current Superior Court of California filing fee toward the costs of the arbitration (i.e. filing fees, administration fees, and arbitrator fees), and each party shall be responsible for paying its own other costs for the arbitration, including, but not limited to attorneys' fees, witness fees, transcript fees, or other litigation expenses that Employee would otherwise be required to bear in a court action. Employee shall not be required to pay any type or amount of expense if such requirement would invalidate this agreement or would otherwise be contrary to the law as it exists at the time of the arbitration. The prevailing party in any arbitration shall be entitled to recover its reasonable attorney's fees and costs, where authorized by contract or statute.

5

This agreement supersedes any and all other arbitration agreements or policies, including, but not limited to, anything regarding arbitration in any employee handbook.

The Agreement also included a provision in which Flanzman and JC USA agreed to resolve their disputes on an individual basis, not as part of "any purported class, collective, or representative proceeding."

In February 2017, when the dispute that led to this appeal arose, Flanzman was eighty-two years old and was the only employee over eighty years of age working at Jenny Craig's Paramus location. At that time, Flanzman's managers informed her that her hours would be reduced from thirty-five to nineteen hours per week. In April 2017, Flanzman's managers further reduced her hours to approximately thirteen hours per week. In June 2017, they reduced Flanzman's hours to three hours per week. Flanzman contends that although the hours of other employees at Jenny Craig's Paramus location were also reduced, those employees were assigned to work at least twenty-two hours per week.

Flanzman asserts that when she complained to her managers about the reduction in her hours, they responded, "[t]hat is just the way it is," and informed her that if she did not accept the reduced schedule, her position would be terminated. She states that after finding a document in her

workplace that confirmed that she was the only employee at the Jenny Craig Paramus location whose hours had been drastically reduced, she declined her managers' offer to work on the three-hour-per-week schedule and left her employment at JC USA.

Flanzman claims that she was constructively discharged, and JC USA contends that Flanzman voluntarily "elected to be separated from her employment."

B.

1.

Flanzman sued Jenny Craig, JC USA, and two of JC USA's employees. She asserted LAD claims for age discrimination, constructive discharge, discriminatory discharge, and harassment.

Relying on the Agreement, defendants moved to dismiss the complaint and to compel arbitration. Defendants contended that California law governed the Agreement, that the Agreement was enforceable under both New Jersey and California law, and that no term of the Agreement was unconscionable.

Flanzman opposed the motion. She argued that the Arbitration Agreement was invalid because it identified no forum for the proposed arbitration. Flanzman also asserted that because the Agreement contained no choice-of-law provision, it was unclear whether New Jersey or California law

7

governed, and that it would be substantively and procedurally unconscionable to require her to pursue her LAD claims in a California forum.

The trial court granted the motion to dismiss and ordered the parties to arbitrate Flanzman's LAD claims. Giving Flanzman the benefit of all factual inferences, the court found that she signed the Agreement and declined to invalidate the Agreement based on her contention that JC USA did not advise her to consult with an attorney before signing it.

The trial court acknowledged the federal policy in favor of arbitration codified in the FAA and recognized New Jersey's corresponding policy in favor of arbitration, as expressed in the NJAA. The court rejected Flanzman's argument that the Agreement could not be enforced without a choice-of-law provision and a provision specifying an arbitral forum. It held that California law governed the arbitration and that the arbitral forum is assumed to be California. The court rejected Flanzman's contention that the Agreement was unconscionable and contrary to public policy because it required her to pursue her claims in a California forum pursuant to California law. The court noted defendants' agreement to arbitrate the claims in a location "closer to New Jersey" on condition that California law would govern those claims. Citing "the interest of fairness," the trial court ordered that Flanzman would choose "which arbitral body would conduct the arbitration."

8

2.

Flanzman appealed the trial court's judgment dismissing the complaint and compelling arbitration. The Appellate Division reversed the trial court's judgment. Flanzman, 456 N.J. Super. at 630.

The Appellate Division invalidated the Agreement because it did not designate an "arbitral forum," a term that it defined as "the mechanism -- or setting -- that parties utilize to arbitrate their dispute." Id. at 623-24. The court stated that an arbitration agreement would not be rendered unenforceable merely because the parties failed to "identify a specific arbitrator," in light of the NJAA's provision for judicial selection of an arbitrator. Ibid. (citing N.J.S.A. 2A:23B-11(a)). It held, however, that

> [t]he failure to identify in the arbitration agreement the general process for selecting an arbitration mechanism or setting -- in the absence of a designated arbitral institution like [the American Arbitration Association (AAA)] or [the Judicial Arbitration and Mediation Service (JAMS)] or any other ADR setting -- deprived the parties from knowing what rights replaced their right to judicial adjudication.
>
> [Id. at 628-29.]

The Appellate Division expressed a preference that to meet the "arbitral forum" requirement, the parties designate an "arbitral institution" such as the AAA or JAMS, because such a designation "informs the parties, at a

9

minimum, about that institution's general arbitration rules and procedures."

Id. at 626. The court held that if the parties select no "arbitral institution,"

they must at least identify "the general process for selecting an arbitration

mechanism or setting" in order for their agreement to be binding. Id. at 628-

29.

Because it viewed the Agreement to lack a provision essential to the

formation of a contract, the Appellate Division declined to enforce that

Agreement and remanded the matter to the trial court for further proceedings.

Id. at 630.

3.

We granted JC USA's petition for certification, 237 N.J. 310 (2019), and

the applications of the New Jersey Association for Justice (NJAJ) and the

National Employment Lawyers Association of New Jersey (NELA) to

participate as amici curiae.

II.

A.

Defendants contend that the Agreement at issue here is valid and

enforceable. They assert that the Agreement meets the standard stated in our

decision in Atalese v. U.S. Legal Services Group, L.P., 219 N.J. 430, 435, 445

(2014), because it clearly and unambiguously explains the distinction between

10

arbitration and a judicial forum. Defendants invoke FAA and NJAA provisions confirming that an arbitration agreement can be enforced even if the parties do not select an arbitrator. They argue that the Appellate Division imposed requirements on the Agreement that are not applied in other contractual settings, thus contravening the FAA as construed by the United States Supreme Court in Kindred Nursing Centers Ltd. Partnership v. Clark, 581 U.S. ___, 137 S. Ct. 1421, 1424 (2017).

B.

Flanzman counters that the Appellate Division premised its decision on settled principles of New Jersey contract law, which demand a "meeting of the minds" as to the essential terms of the parties' agreement. She views Atalese not only to require that an arbitration agreement clearly and unmistakably identify the rights that are waived, but also to mandate a description of the arbitration proceedings that will replace the adjudication of claims in court. Flanzman asserts that neither the FAA nor NJAA obviates the need for the parties to specify an arbitral forum in order to enter into an enforceable agreement.

C.

Amicus curiae NJAJ argues that an arbitration agreement does not bind the parties unless it specifies the arbitration organization that will resolve the

11

parties' disputes. It cites the policies adopted by three prominent arbitration organizations mandating that all arbitrations be administered in accordance with the respective organization's rules, and asserts that a party should know what arbitration organization will administer his or her arbitration before agreeing to waive the right to litigate claims in court.

D.

Amicus curiae NELA contends that when employees agree to arbitration, they should know not only what rights they waive by their agreement, but what procedures will take the place of court proceedings should there be a dispute. It argues that Flanzman's LAD claims can be subject to arbitration only if the parties clearly and unmistakably elect arbitration as an alternative to the court proceedings envisioned in LAD and that, because the Agreement in this case is silent as to an arbitral forum, it does not provide the basis for mutual assent.

III.

A.

We review de novo the trial court's judgment dismissing the complaint and compelling arbitration. Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019); Morgan v. Sanford Brown Inst., 225 N.J. 289, 302-03 (2016). The Court does not defer to the interpretive analysis of either the

trial court or the Appellate Division unless persuaded by either court's reasoning. Morgan, 225 N.J. at 302-03.

B.

1.

Section 2 of the FAA represents "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Section 2 provides that

> [a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.
>
> [9 U.S.C. § 2.]

In accordance with the FAA, "courts must place arbitration agreements on an equal footing with other contracts . . . and enforce them according to their terms." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011) (first citing Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 443

13

(2006), then citing <u>Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.</u>, 489 U.S. 468, 478 (1989)). As the Supreme Court held in <u>Kindred Nursing</u>,

> [t]he FAA thus preempts any state rule discriminating on its face against arbitration -- for example, a "law prohibit[ing] outright the arbitration of a particular type of claim." And not only that: The Act also displaces any rule that covertly accomplishes the same objective by disfavoring contracts that (oh so coincidentally) have the defining features of arbitration agreements. In <u>Concepcion</u>, for example, we described a hypothetical state law declaring unenforceable any contract that "disallow[ed] an ultimate disposition [of a dispute] by a jury." Such a law might avoid referring to arbitration by name; but still, we explained, it would "rely on the uniqueness of an agreement to arbitrate as [its] basis . . . ."
>
> [137 S. Ct. at 1426 (all but first alteration in original) (quoting <u>Concepcion</u>, 563 U.S. at 341-42).]

Thus, under federal law, "[a]n arbitration clause cannot be invalidated by state-law 'defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue.'" <u>Atalese</u>, 219 N.J. at 441 (quoting <u>Concepcion</u>, 563 U.S. at 339).

In the FAA, Congress also promoted arbitration by addressing the selection of an arbitrator. Section 5 of the statute authorizes a court to designate an arbitrator on the application of any party if no contractual

provision governs the designation of an arbitrator, "or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy." 9 U.S.C. § 5. An arbitrator or arbitrators appointed by the court in accordance with the FAA "shall act under the [arbitration] agreement with the same force and effect as if he or they had been specifically named therein." Ibid.

2.

Like the federal policy expressed by Congress in the FAA, "the affirmative policy of this State, both legislative and judicial, favors arbitration as a mechanism of resolving disputes." Martindale v. Sandvik, Inc., 173 N.J. 76, 92 (2002); accord Atalese, 219 N.J. at 440. The New Jersey Legislature "codified its endorsement of arbitration agreements" in the NJAA. Hojnowski v. Vans Skate Park, 187 N.J. 323, 342 (2006). The NJAA governs "all agreements to arbitrate made on or after January 1, 2003," except "an arbitration between an employer and a duly elected representative of employees under a collective bargaining agreement or collectively negotiated agreement." N.J.S.A. 2A:23B-3(a).

The NJAA "is nearly identical to the FAA and enunciates the same policies favoring arbitration." Arafa v. Health Express Corp., ___ N.J. ___,

15

\_\_\_ (2020) (slip op. at 22) (citing <u>Atalese</u>, 219 N.J. at 440). The statute was enacted to "advance arbitration as a desirable alternative to litigation and to clarify arbitration procedures in light of the developments of the law in this area." <u>Assemb. Judiciary Comm. Statement to S. 514</u> 1 (Dec. 9, 2002). Closely tracking its federal counterpart, the NJAA provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." N.J.S.A. 2A:23B-6(a).

The NJAA's legislative history confirms the Legislature's view that the statute would operate as a "default" provision, deferring in most respects to the terms agreed upon by the parties but mandating certain provisions that the Legislature viewed to be critical. As the Assembly Statement to the bill explained,

> [the NJAA] is a default act, meaning that many of its provisions may be varied or waived by contract. Provisions that may not be varied or waived include the rule that an agreement to submit a dispute to arbitration is valid; the rules that govern disclosure of facts by a neutral arbitrator; and the standards for vacating an award but permitting the parties by agreement to review an arbitration award under certain circumstances.
>
> [<u>Assemb. Judiciary Comm. Statement to S. 514</u> 1.]

16

As did Congress when it enacted 9 U.S.C. § 5, the Legislature ensured in the NJAA that a court can act when the parties have not agreed on a specific arbitrator or designated a method of choosing an arbitrator, or when an agreed-upon selection process has failed:

> If the parties to an agreement to arbitrate agree on a method for appointing an arbitrator, that method shall be followed, unless the method fails. If the parties have not agreed on a method, the agreed method fails, or an arbitrator appointed fails or is unable to act and a successor has not been appointed, the court, on application of a party to the arbitration proceeding, shall appoint the arbitrator. An arbitrator so appointed has all the powers of an arbitrator designated in the agreement to arbitrate or appointed pursuant to the agreed method.
>
> [N.J.S.A. 2A:23B-11(a).]

The NJAA thus codifies the Legislature's intent that an arbitration agreement may be valid and enforceable even if the parties have not chosen a specific arbitrator or set forth a process for the selection of the arbitrator. See ibid. It authorizes the court, upon application of a party, to decide an issue left open by the parties with respect to the selection and appointment of their arbitrator, thus facilitating the performance of the agreement. Ibid.

The NJAA also provides general guidance as to how the arbitration will proceed. It provides that the "arbitrator may conduct an arbitration in such manner as the arbitrator considers appropriate for a fair and expeditious

17

disposition of the proceeding." N.J.S.A. 2A:23B-15(a). The statute addresses the arbitrator's conduct of conferences, evidential determinations, summary disposition of a claim or issue, and hearings; it also authorizes a court to replace a designated arbitrator who "ceases or is unable to act." N.J.S.A. 2A:23B-15(a) to (e); see also Kernahan, 236 N.J. at 324 (noting that the NJAA "grants an arbitrator significant discretion over evidentiary matters in order to advance the goal of quick and fair disposition of the parties' dispute").

In light of the NJAA's default provisions supplying terms missing from an arbitration agreement, a court's enforcement of an agreement supplemented by those terms comports with common-law principles of New Jersey contract law. Under state law, "if parties agree on essential terms and manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992); accord Graziano v. Grant, 326 N.J. Super. 328, 339-40 (App. Div. 1999). "So long as the basic essentials are sufficiently definite, any gaps left by the parties should not frustrate their intention to be bound." Berg Agency v. Sleepworld-Willingboro, Inc., 136 N.J. Super. 369, 377 (App. Div. 1975). As this Court has observed,

> all but the simplest contracts are, to some extent, obligationally incomplete -- there are gaps in the contract's explicit and implicit provisions that leave the parties' obligations unspecified under certain

18

contingencies. It falls to public institutions -- courts and legislatures -- to create background, or "default," rules to govern private relationships when such unaddressed contingencies arise and private ordering, thus, has failed.

[Mantilla v. NC Mall Assocs., 167 N.J. 262, 272 (2001) (quoting Russell Korobkin, The Status Quo Bias and Contract Default Rules, 83 Cornell L. Rev. 608, 609-10 (1998)).]

Thus, in Mantilla, the Court applied a default rule based on case law that limited an indemnification obligation absent an express contractual term to the contrary. Id. at 267-68. In Sun Coast Merchandise Corp. v. Myron Corp., the Appellate Division recognized that where an offeree renders "an acceptance coupled with the proposal of new or different terms . . . either the new or different terms . . . become part of the contract or those terms could be provided by the gap-filling provisions of the [Uniform Commercial Code (UCC)]." 393 N.J. Super. 55, 76 (App. Div. 2007). In Kas Oriental Rugs, Inc. v. Ellman, the Appellate Division noted that "when a contract is found to have emanated from an agreement on essential material terms, a court will also fill the gaps created by the parties' silence by adding terms that accomplish a result that was necessarily involved in the parties' contractual undertaking." 394 N.J. Super. 278, 287 (App. Div. 2007); see also Richardson v. Union Carbide Indus. Gases, Inc., 347 N.J. Super. 524, 532 (App. Div. 2002)

19

(recognizing that under "[t]he majority view . . . conflicting terms fall out and, if necessary, are replaced by suitable UCC gap-filler provisions"); Neptune Research & Dev., Inc. v. Teknics Indus. Sys., Inc., 235 N.J. Super. 522, 531 (App. Div. 1989) ("in the absence of an agreement" with respect to time requirements "the [UCC] will imply a provision in the contract requiring delivery within a reasonable time," pursuant to N.J.S.A. 12A:2-309(1)).

Thus, consistent with New Jersey contract law and the State's policy in favor of arbitration, the Legislature provided a default provision for the selection of an arbitrator and general guidance for the administration of the arbitration. N.J.S.A. 2A:23B-11(a), -15. Although the parties may choose to agree upon an arbitrator or arbitral organization or set forth a plan for such a designation, the NJAA's default provisions are available to parties who leave those issues unresolved. N.J.S.A. 2A:23B-11(a).

C.

1.

Against that backdrop, we consider the Arbitration Agreement at issue in this appeal.

When a New Jersey court is "called on to enforce an arbitration agreement, [its] initial inquiry must be -- just as it is for any other contract -- whether the agreement to arbitrate all, or any portion, of a dispute is 'the

product of mutual assent, as determined under customary principles of contract law.'" Kernahan, 236 N.J. at 319 (quoting Atalese, 219 N.J. at 442).

Conducting that inquiry in Atalese, we observed that "under New Jersey law, any contractual 'waiver-of-rights provision must reflect that [the party] has agreed clearly and unambiguously' to its terms." Atalese, 219 N.J. at 443 (alteration in original) (quoting Leodori v. Cigna Corp., 175 N.J. 293, 302 (2003)). We held that an arbitration clause, "in some general and sufficiently broad way, must explain that the plaintiff is giving up her right to bring her claims in court or have a jury resolve the dispute." Id. at 447. Noting that "[n]o particular form of words is necessary to accomplish a clear and unambiguous waiver of rights," we stated that "[o]ur courts have upheld arbitration clauses phrased in various ways when those clauses have explained that arbitration is a waiver of the right to bring suit in a judicial forum." Id. at 444. Consistent with New Jersey's general waiver-of-rights law, however, we required language that explains that a party who agrees to arbitration waives the right to sue in court and makes clear that arbitration and civil litigation are distinct proceedings. Id. at 442-48.

Applying the "clear and unmistakable" standard to the waiver of rights provision before us in Atalese, we found no evidence of mutual assent to arbitrate future disputes in a consumer contract's arbitration provision that did

21

not explain that the parties had waived the rights to pursue their claims before a judge or jury in court. Id. at 444-48. We accordingly invalidated the arbitration clause. Id. at 448.

The Arbitration Agreement at issue in this appeal meets the standard of Atalese. The Agreement clearly and unmistakably informs the parties that for "[a]ny and all claims or controversies arising out of or relating to [Flanzman's] employment, the termination thereof, or otherwise arising between" Flanzman and JC USA, "final and binding arbitration" will take the place of "a jury or other civil trial." Although the Agreement provides only a general concept of the arbitration proceeding that would replace a judicial determination of Flanzman's claims, it makes clear that the contemplated arbitration would be very different from a court proceeding.

Accordingly, under Atalese, the Agreement at issue here represents a "meeting of the minds" with respect to Flanzman's waiver of her right to pursue her age discrimination cause of action under the LAD before a judge or a jury in favor of an arbitration forum.

2.

When it invalidated the Agreement, the Appellate Division set forth a requirement for arbitration agreements that was not imposed in Atalese. Flanzman, 456 N.J. Super. at 628-29; cf. Atalese, 219 N.J. at 444-48. The

22

court mandated either the designation in the agreement of an "arbitral institution" such as AAA or JAMS, or a description of "the general process for selecting an arbitration mechanism or setting." Flanzman, 456 N.J. Super. at 628-29. To the Appellate Division, the absence of such terms meant that the parties "did not understand [their] rights under the arbitration agreement that ostensibly foreclosed [Flanzman's] right to a jury trial." Id. at 617.

We respectfully disagree with the Appellate Division's reasoning. The principle that the court stated is not among the "grounds as exist at law or in equity for the revocation of any contract." Atalese, 219 N.J. at 441 (internal quotation marks omitted) (quoting Martindale, 173 N.J. at 85); accord 9 U.S.C. § 2; N.J.S.A. 2A:23B-6(a). No New Jersey statutory provision or prior decision has elevated the selection of an "arbitral institution" or the designation of a "general process for selecting an arbitration mechanism or setting" to the status of essential contract terms, without which an arbitration agreement must fail.

To the contrary, the NJAA makes clear that its default provision for the selection of an arbitrator may operate in the absence of contractual terms prescribing such procedures. See N.J.S.A. 2A:23B-11(a). The NJAA reflects the Legislature's intent that the parties' omission of an arbitrator or arbitral organization, or their failure to set forth the method by which they will choose

23

an arbitrator in the event of a dispute, will not preclude the enforcement of their agreement. Ibid.

The Appellate Division construed the NJAA to authorize judicial appointment of an arbitrator only if the parties have previously agreed on an "arbitral forum" -- a particular "arbitral institution, or an arbitrator or arbitrators" -- but are "unable to actually select the arbitrator." Flanzman, 456 N.J. Super. at 623-25. We do not share that view. Nothing in the NJAA suggests the parties' agreement in their contract on an arbitral institution or individual or multiple arbitrators is a prerequisite to the court's appointment of an arbitrator. Indeed, the NJAA expressly states that the court may appoint an arbitrator on a party's application in several settings, including circumstances in which "the parties have not agreed on a method" to select an arbitrator. N.J.S.A. 2A:23B-11(a). The statute applies to the Arbitration Agreement in dispute here.[3]

---

[3] The Appellate Division found it significant that "neither party made a N.J.S.A. 2A:23B-11(a) application to the judge" and that "the parties did not argue on this appeal that the judge should have appointed an arbitrator under N.J.S.A. 2A:23B-11(a)." Flanzman, 456 N.J. Super. at 624. No such application would be expected at the early stage of this matter, at which the only question before the court was whether Flanzman's claims should be litigated in court or arbitrated. There is no evidence in the record that any issue arose between the parties that would warrant an application to the court under N.J.S.A. 2A:23B-11(a).

24

The setting of this case is distinct from that of the decision on which the Appellate Division most heavily relied, Kleine v. Emeritus at Emerson, 445 N.J. Super. 545 (App. Div. 2016).  There, another Appellate Division panel invalidated an arbitration agreement because the parties' chosen arbitration organization, AAA, had announced prior to the execution of the arbitration agreement that it would "no longer accept the administration of [nursing home personal injury] cases involving individual patients without a post-dispute agreement to arbitrate."  Id. at 552.  The court reasoned that because the parties had chosen AAA as their arbitration organization, but their dispute was in the category of disputes that AAA no longer accepted, "the arbitration process contemplated by the clause in question was not available when the parties executed their contract."  Ibid.  Here, in contrast, there was no agreement to a particular arbitral organization that proved to be unavailable, and no evidence that the involvement of a specific organization was an essential term of the parties' Agreement.

We share the Appellate Division's view that a detailed description of the contemplated arbitration in an arbitration agreement enhances the clarity of that agreement.  See Flanzman, 456 N.J. Super. at 626-28.  If the parties identify a specific arbitrator or arbitrators or agree to retain an arbitrator affiliated with a given arbitration organization who will apply that

25

organization's rules, they may avoid future disputes. We also agree with the Appellate Division that it may be advantageous for parties to designate in their agreement an arbitral organization but also provide an alternative method of choosing an organization should the parties' primary choice be unavailable. See id. at 629-30 (citing Oasis Health & Rehab. of Yazoo City, LLC v. Smith, 42 F. Supp. 3d 821, 824-26 (S.D. Miss. 2014)). In many settings, such a provision could provide a sound and practical basis to proceed.

We do not, however, view the parties' omission of a designated arbitral institution or general process for selecting an arbitration mechanism or setting to warrant the invalidation of an arbitration agreement. Parties who have expressed mutual assent to the arbitration of their disputes instead of a court proceeding may choose to defer the choice of an arbitrator to a later stage, when they will be in a position to assess the scope and subject of the dispute, the complexity of the proposed arbitration, and considerations of timing and cost. Given the availability of many skilled and experienced arbitrators -- some affiliated with arbitration organizations and some not -- parties may choose to refrain from designating an arbitrator or an arbitration organization until a dispute arises. Should the parties prove unable or unwilling to agree upon an arbitrator, the court may exercise its appointment authority in accordance with N.J.S.A. 2A:23B-11 on the application of either party, and the

designated arbitrator may conduct the arbitration in accordance with the procedures described in N.J.S.A. 2A:23B-15.

In short, we concur with the trial court that the Agreement at issue in this appeal meets the standards imposed by New Jersey contract law, and that it is therefore valid and enforceable.

D.

We briefly address one aspect of the trial court's judgment. Based on a provision of the Agreement stating that Flanzman "will pay the then-current Superior Court of California filing fee towards the costs of the arbitration," the trial court ruled that California law would govern the arbitration and that the forum for the arbitration would be California. In the interest of fairness, the court nonetheless allowed Flanzman to choose the "arbitral body" to administer the proceedings.

We do not view the filing-fee provision in the Agreement to constitute either a choice-of-law provision prescribing California law as the law governing the arbitration or a forum-selection clause requiring that the arbitration be conducted in California. Instead, we find the Agreement to be silent as to the governing law and the jurisdiction in which the arbitration should be held. We therefore vacate the trial court's judgment insofar as it designates California law as the governing law and concludes that the parties

27

agreed that California would provide the forum of the arbitration.  That issue is for the arbitrator to resolve.

## IV.

The determination of the Appellate Division is reversed, and the judgment of the trial court, as modified, is reinstated.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PATTERSON's opinion.

28